UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN HERZOG | ) | CIVIL ACTION NO. |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | TRIAL BY JURY DEMANDED |
| ORSINI ENTERPRISES, INC. D/B/A | ) | |
| EXECUTIVE JEEP | ) | |
| Defendant | ) | JULY 25, 2018 |
| | ) | |

## COMPLAINT

### I.  INTRODUCTION

1.      This is a suit brought under the Magnuson-Moss Warranty Act ("MMWA"),

15 U.S.C. §§ 2301 *et seq.* and Article 2 of the Uniform Commercial Code ("UCC"),

Conn. Gen. Stat. §§ 42a-2-101 *et seq.*, against Orsini Enterprises, Inc. d/b/a Executive

Jeep ("Executive"), a car dealership that fraudulently and maliciously sold Plaintiff a

2015 Jeep Grand Cherokee (the "Vehicle") as a "Certified Pre-Owned" ("CPO") vehicle,

even though the Vehicle had inadequately repaired structural damage rendering it

unsafe to drive and ineligible for inclusion in Jeep's CPO program.  The Plaintiff also

asserts pendent state law claims for violations of the Connecticut Unfair Trade

Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*

## II. PARTIES

1.      Plaintiff, Brian Herzog ("Plaintiff"), is a natural person residing in Miller Place, New York and is a "consumer" as that term is defined in §2301(3) of MMWA.

2.      Executive is a Connecticut corporation that operates a motor vehicle dealership in North Haven, Connecticut.  It is an authorized dealership for Jeep and is a warrantor as that term is defined in §2301(5) of MMWA.

## III. JURISDICTION

3.      Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 2310(d)(1)(B) and 15 U.S.C. § 1332.  The total sale price for the Vehicle, as alleged below, is $37,647.58.  When this amount is combined with Plaintiff's contract claim for common law punitive damages, which are based upon the attorney's fees incurred by him and expected to exceed $40,000, and his claim for statutory punitive damages which could also exceed $40,000, then the total amount in controversy exceeds $75,000.

4.      Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

5.      This Court has jurisdiction over Executive because it is incorporated and located in Connecticut and regularly does business in Connecticut.

6.      Venue in this Court is proper, because Executive is incorporated in this state and the transaction alleged herein occurred in this district.

## IV. FACTUAL ALLEGATIONS

7.      Executive is a dealership for Jeep brand vehicles manufactured by FCA, LLC ("FCA".)

8.      FCA has established a CPO program as a means to market pre-owned vehicles by its dealership network, including Executive.

9.      Vehicles included in the Jeep CPO program are represented by FCA and the participating dealership as having been subjected to a "meticulous" 125-point inspection to ensure that they meet the program's stringent certification criteria.

10.     FCA's website advertises that every CPO vehicle "can be counted on to go the distance. Our CPO vehicles must pass a stringent certification process that guarantees only the finest late model vehicles get certified. Every vehicle that passes is then subjected to a comprehensive 125-point inspection and a thorough reconditioning process using Authentic Mopar® Parts."

11.     Plaintiff was interested in purchasing a CPO Jeep and searched online for an attractive deal.

12.     Plaintiff found a 2015 Jeep Grand Cherokee (the "Vehicle") in Executive's inventory, and it was listed at a lower price than other comparable Jeeps offered by dealerships that were close to his home.

13.     Due to the Vehicle's competitive price and CPO status, Plaintiff decided that making the trip from his home in New York to Connecticut was in his economic interest.

14.     Plaintiff traveled to Executive and agreed to purchase the Vehicle for a cash price of $33,699.

15.     The total sale price for the Vehicle after fees and sales tax was $37,647.58.

16.     Unbeknownst to Plaintiff, the Vehicle had been involved in a serious accident or similar event prior to his purchase resulting in structural damage that had not been properly repaired.

17.     Executive represented to Plaintiff that the Vehicle was a CPO, however it never provided Plaintiff was a copy of the CPO inspection report.

18.     Executive also failed to provide Plaintiff with a copy of the Connecticut Department of Motor Vehicle Form K-208 which would evince the results of the safety inspection required pursuant to Conn. Gen. Stat. § 14-62(g).

19.     Plaintiff took delivery of the Vehicle on or about March 23, 2017.

20.     Shortly after taking delivery, Plaintiff noticed excessive air noise from under the Vehicle.

21.     Plaintiff brought the Vehicle to Executive for service shortly thereafter and mentioned the noise.

22.     Plaintiff was assured by the service department that there was nothing wrong with the underside of the Vehicle.

23.     In March of 2018, Plaintiff was renewing the insurance policy for the Vehicle, and his insurance broker informed him that a $22,935 claim had been made on the Vehicle's insurance policy in December 2015.

24.     Plaintiff was alarmed to hear that the Vehicle had been involved in such a serious event and immediately contacted Executive to inquire about the damage to the Vehicle, and he provided Executive with the details of the insurance claim.

25.     Executive was evasive in its response to Plaintiff and would not provide him with any details regarding the prior loss.

26.     Plaintiff demanded Executive repurchase the Vehicle, and Executive refused.

27.     Plaintiff was concerned about the safety of his Vehicle and had it inspected by an auto body expert.

28.     That expert opined that the Vehicle was unsafe to drive, not eligible for CPO status, and was not in a merchantable condition at the time of sale to Plaintiff.

29.     Specifically, the Vehicle's floor plan was damaged and inadequately repaired in such a way that an impact would cause excessive intrusion to the cabin and posed a risk of injury to the occupants.

30.     Moreover, this damage would have been apparent to any automotive professional undertaking the CPO inspection or mandatory inspection required pursuant to Conn. Gen. Stat. § 14-62(g).

31.     The independent expert determined that the Vehicle's value had diminished $8,216 at the time of sale due to the damage.  The cost of that inspection was $650.

32.     Plaintiff had accepted delivery of the Vehicle unaware of the extent of the damage.

## V.  CAUSES OF ACTION

### A.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

33.     The Vehicle is a consumer product as that term is defined in § 2301(1) of the MMWA (15 U.S.C. §§ 2301-2312).

34.     Executive breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314, in that the Vehicle would not pass in trade without objection under the description in which it was sold, as a Certified Pre-Owned 2015 Jeep Cherokee.

35.     Additionally, Executive breached the implied warranty of merchantability by selling the Vehicle to Plaintiff in an unsafe condition with structural damage.

36.     Executive knew, or reasonably should have known, based on its expertise in the sale and certification of used Jeep vehicles, that the Vehicle did not meet the standards for "Certified Pre-Owned" status due its structural damage.

37.     It is not possible for Executive to cure the breach of implied warranty of merchantability, or Plaintiff provided Executive with a reasonable opportunity to cure the breach of implied warranty but it has not done so, or both.

38.     Executive's breaches of the implied warranty of merchantability were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to Plaintiff's interests and the injury that he sustained.

39.     Specifically, Executive falsely represented that it had conducted a Jeep CPO inspection of the Vehicle and falsely represented that the Vehicle had passed the CPO inspection and falsely certified that the Vehicle met the criteria for certification.

6

40.     Executive's breach of the implied warranty of merchantability has caused Plaintiff to incur damages, including common law punitive damages.

41.     Plaintiff also seeks an order pursuant to MMWA requiring Executive to repurchase the Vehicle.

42.     Executive is also liable for attorney's fees pursuant to MMWA.

## B.     BREACH OF EXPRESS WARRANTY

43.     Executive made affirmations of fact or promise relating to the Vehicle that became part of the basis of the bargain and that created express warranties pursuant to Conn. Gen. Stat. § 42a-2-313(a).

44.     Specifically, Executive represented that the Vehicle had undergone the necessary inspections and met the requisite criteria to be designated as a "Jeep Certified Pre-Owned" vehicle.

45.     Executive's representations that the Vehicle was a CPO vehicle constituted a description of the Vehicle that was part of the basis of the bargain, i.e., that the Vehicle satisfied the rigorous requirements for certification under Jeep's CPO program and that it met the requirements to be designated as a Jeep CPO vehicle, and this description became part of the basis of the bargain.

46.     The Vehicle did not meet the criteria for certification under Jeep's CPO program.

47.     Jeep's breaches of express warranties were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that he sustained.

48.    As a result of the above-described actions, Executive is liable to Plaintiff for his damages, including common law punitive damages.

### C.    CONNECTICUT UNFAIR TRADE PRACTICES ACT

49.    Executive has violated CUTPA by acting deceptively or unfairly or both, in the following ways:

a.    It made false statements that Vehicle was a CPO Vehicle when it was ineligible for such designation;

b.    It sold the Vehicle to Plaintiff in an unsafe condition with structural damage;

c.    It failed to provide Plaintiff with a copy of the Connecticut DMV Form K-208, meaning it either failed to inspect the Vehicle or it sold it to Plaintiff despite the Vehicle's defects;

d.    It failed to provide Plaintiff with a copy of the CPO inspection checklist indicating the results of said inspection;

e.    It falsely and deceptively told Plaintiff that the Vehicle had no defects when he brought it in for servicing after noticing the wind noise; and

f.    It refused to repair the Vehicle when Plaintiff brought it in for servicing; and

g.    It refused to accept a return of the Vehicle.

50.    As a result of Executive's conduct, the Plaintiff has suffered an ascertainable loss of money and property, including, but not limited to, the purchase of a Vehicle that was worth substantially less than the amount that it would be worth if the representations had been true and owning a Vehicle that is unsafe to drive.

51.     For Executive's violations of CUTPA, the Plaintiff is entitled to damages, attorney's fees and costs, and, in the discretion of the court, punitive damages.

52.     Plaintiff also seeks equitable relief in the form of an order requiring Executive to repurchase the Vehicle.

WHEREFORE, Plaintiff claims actual damages, punitive damages, costs, reasonable attorney's fees, and such other relief to which the Plaintiff is, at law, or in equity and by statute, entitled to against the defendant. Plaintiff also seeks an order requiring Executive repurchase the Vehicle.

PLAINTIFF, BRIAN HERZOG

By:

    Daniel S. Blinn (ct02188)
    dblinn@consumerlawgroup.com
    Brendan L. Mahoney (ct29839)
    bmahoney@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel.  (860) 571-0408
    Fax. (860) 571-7457